## BLY v. EDISON ELECTRIC ILLUMINATING CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. NUISANCE—PRIVATE NUISANCES—ACTION BY LESSEE—MEASURE OF DAMAGES.

　　The measure of damages sustained by a lessee in consequence of the maintenance of a nuisance is the diminution in the "usable value" of the premises to the lessee occasioned by the wrongful act; "usable value" meaning the value of the use of the premises to the occupant, as distinct from the rental reserved in the lease.

　　[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Nuisance, § 120.]

2. DAMAGES—NUISANCES—EXCESSIVE DAMAGES.

　　Defendant constructed an electric power house. The operation of the machinery discharged soot, cinders, and unpleasant odors, injuriously affecting the use of a building 175 feet distant. The machinery produced constant vibrations in the building, causing the chandeliers and windows to rattle continually. Plaintiff rented the building, paying $3,000 a year,

and used it for a boarding house. After the erection of the power house in 1888 the number of boarders fell from 25, the average number, to 20, and later to 15, in 1903, when plaintiff left, thereby decreasing the receipts $25 to $50 a week, without reducing the cost in running the building other than the cost for provisions. *Held*, that a verdict for $4.000 was not excessive.

Appeal from Trial Term, New York County.

Action by Sarah A. Bly against the Edison Electric Illuminating Company of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

J. Haviland Tompkins, for appellant.
George J. McEwen, for respondent.

INGRAHAM, J. The nature of this action and the questions presented are stated in the opinion of this court (54 App. Div. 427, 66 N. Y. Supp. 737) and in the Court of Appeals (172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500) upon a former appeal from a judgment in favor of the plaintiff. It seems that two actions were commenced; one in equity for an injunction to restrain the continuance of a nuisance, and the other at law to recover damages for the maintenance of the nuisance. The equity action, having been brought on for trial, resulted in a judgment awarding the plaintiff an injunction and $4,000 damages. From that judgment the defendant appealed to this court, where the judgment was modified by reducing the amount of damages to six cents, and as thus modified affirmed. Upon appeal to the Court of Appeals, the action of this court in reducing the damages was disapproved, but the judgment was reversed on account of an error of the trial justice, and a new trial ordered. The plaintiff's lease of the premises having expired, these two actions were consolidated and tried as an action at law, which resulted in a verdict for the plaintiff for $4,000, as the damages that she had sustained in consequence of the nuisance maintained by the defendant; and from that judgment the defendant now appeals.

This court upon the former appeal affirmed the judgment of the court below in so far as it found that the defendant maintained a nuisance, and the finding of the jury to the same effect is, according to our former decision, sustained by the evidence.

In Bates v. Holbrook, 89 App. Div. 548, 85 N. Y. Supp. 673, appeal dismissed 178 N. Y. 568, 70 N. E. 1094, we had occasion to examine the question as to the proper measure of damages where the lessee of a building contiguous to a nuisance maintained by the defendant was injured thereby, and we held that it was the diminution in the usable value of the premises to the occupant caused by the wrongful act that is the measure of damages; that "usable value" means the value of the use of the premises to the occupant, as distinct from the rental of the premises reserved in the lease by the owner to the tenant.

In directing a new trial in this case the Court of Appeals held that the plaintiff, as lessee, had a cause of action against the defendant for the damages caused by the nuisance, the court saying:

"If the act complained of is a nuisance, it is a wrong, the existence of which cannot be justified at any time as against any one injuriously affected thereby. If this is the rule, is it any less applicable in favor of tenants, whose term begins during the continuance of the nuisance than in favor of subsequent owners?"

And in answering that question the court say:

"Several propositions seem to be quite satisfactorily established, therefore, both upon principle and by authority: (1) That an owner of property affected by a nuisance may maintain an action to recover his damages, or to abate the nuisance, or both, no matter whether he takes his title before or after the introduction of the nuisance; (2) that a landlord and his tenant have separate estates for injuries to which each may have his appropriate remedy. * * * The last owner or occupant, when he acquires his property or possession, acquires with it all the rights which by law belong to it, and exemption from wrongful injury by a contiguous proprietor is one of them."

It was also held that the plaintiff was entitled to recover only the damages accruing to her as the occupant of the premises prior to the commencement of the action. The only question therefore which seems to be open is whether the plaintiff was entitled to recover the amount awarded to her by the jury.

The evidence shows that the defendant had constructed upon certain property owned by it, about 175 feet distant from the property occupied by the plaintiff, a large building as a power house, and had placed therein numerous steam boilers, steam engines, steam pipes, dynamo electric machines, elevators, shafting, pulleys, and other machinery for the purpose of generating electricity to be supplied by it to the general public for lighting and other purposes, and that the defendant had so constructed and conducted the property and constructed and operated the machinery as to discharge upon the premises of the plaintiff quantities of soot, cinders, ashes, and noisome gases, unpleasant odors, steam and water condensing from steam, and had also made and produced in the operation of its machinery loud, disagreeable and incessant noises, and a very great jar and vibration which were transmitted into and through the premises of the plaintiff. The defendant admits that in the year 1887 it became possessed of, and still is in the exclusive possesssion of, this property, and has built upon it a building and placed therein steam boilers, steam engines, steam pipes, dynamo electrical machines, and other machinery for the purpose of generating electricity to be supplied by it to the general public for lighting and other purposes. There was evidence that the building occupied by the plaintiff was affected by the continual vibration caused by the defendant's occupation of its property; that the chandeliers and windows continuously shook and rattled; that everything in the house felt as if it were pulsing in some way; that the windows had to be plugged up; that the vibration of the building continued day and night; that after the construction of the defendant's power house there was a change in the atmospheric conditions surrounding the house; that it became smoky and soot fell in the yard and came in the windows during all the time that the defendant conducted its operations; that cinders and ashes damaged the curtains when the windows were open, and the inside of the house had to be cleaned continuously to keep it in order; that immediately after the erection of the defendant's building the noise and vibration commenced and con-

tinued growing worse from year to year as the defendant increased its power, to February, 1900, when the plaintiff left the premises; that the plaintiff leased these premises, paying $3,000 a year rent, conducting a boarding house thereon; that the house accommodated about 25 people, and was continuously well filled up to the time the power house was built in 1888; that after the defendant constructed its power house the average number of boarders fell from 25 to about 20, and further decreased down to 1903, when the plaintiff left the premises, to about 15; that there was a decrease in the receipts after the power house was built from $25 to $50 a week, and that the receipts constantly decreased; that during the time of this decrease there was no change in the cost of maintaining the house for servants, lighting, and incidental expenses or rent other than the cost of provisions.

These conditions having been proved, the question as to the amount of the damage sustained by the plaintiff in consequence of the nuisance was a question for the jury, and its verdict was sustained by the evidence. There is no serious question as to rulings upon evidence. The charge was fair, and no exception to it requires consideration.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur.

---

KNICKERBOCKER v. GROTON BRIDGE & MFG. CO.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

CORPORATIONS—ACTION FOR DISSOLUTION—COMPLAINT—SUFFICIENCY.

    Appeal from Special Term, New York County.

